## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____
                                                    )
HARMONIA HOLDINGS GROUP, LLC,   )
                                                    )
             Plaintiff,                             )
                                                    )
      v.                                            )        No. 21-2001C
                                                    )
THE UNITED STATES,                       )        Filed: December 15, 2021
                                                    )
             Defendant.                        )
_____)

## OPINION AND ORDER

Plaintiff Harmonia Holdings Group, LLC claims the Defense Logistics Agency ("DLA")

imposed a new, materially different condition on the exercise of the option under its J6 Enterprise

Technology Services indefinite delivery, indefinite quantity ("JETS IDIQ") contract. Despite

Plaintiff's best efforts to assert the Court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1)

(2011), its claims involve matters of contract administration that fall squarely under the Contract

Disputes Act ("CDA"), 41 U.S.C. §§ 7101–7109 (2011), the jurisdictional prerequisites of which

Plaintiff has not alleged. Even if the claims were properly brought under § 1491(b)(1), Plaintiff is

not an "interested party" and thus lacks standing. Because Plaintiff has failed to demonstrate

jurisdiction, the Court **GRANTS** the Government's Motion to Dismiss Plaintiff's Complaint and

**DENIES AS MOOT** the parties' remaining motions.

## I. BACKGROUND

### A.     Factual Background

On December 22, 2016, DLA awarded Plaintiff JETS IDIQ contract number SP4709-17-

D-0037 ("Contract") under JETS IDIQ Solicitation SP4701-15-R-0030 ("Solicitation") through

which it is able to compete for task orders to perform a variety of information technology services.

Compl. ¶ 1, ECF No. 1; *see* Admin. R. 1, ECF No. 12-1 ("AR").[1]  Performance of the Contract is split into two periods: a base period of five years beginning January 4, 2017, and ending January 3, 2022, and a three-year option period beginning January 4, 2022, and ending January 3, 2025. AR 52, 202.  Plaintiff, as a small business awardee, was one of 142 contractors awarded a JETS IDIQ contract under the Solicitation.  *See* Decl. of Michael J. Yacobacci ¶¶ 5, 6, ECF No. 13-1.

Per its terms, three groups of JETS IDIQ awardees are eligible to compete on task orders under the Contract.  Group A awardees consist of all successful offerors, and they qualify to compete on all unrestricted task orders. AR 193, 256.  Group B awardees consist of JETS IDIQ holders that are certified as either small businesses or section 8(a) small businesses.  *Id.*  Awardees in Group B may compete on unrestricted task orders (Group A) and task orders set-aside 100 percent for small businesses (Group B).  *Id.*  Group C awardees consist of section 8(a) JETS IDIQ holders.  *Id.*  These awardees may compete on all unrestricted task orders (Group A), task orders set aside for small businesses (Group B), and task orders restricted to Group C under FAR 19.803(b)(4)(ii).  *Id.*  During the Contract's base period, Plaintiff was a certified small business and, as such, has been able to compete under Group A and Group B.  *Id.* at 52.

Other-than-small business JETS IDIQ awardees can compete only on Group A unrestricted task orders as part of a Contractor Teaming Arrangement ("CTA").  ECF No. 13-1 ¶ 9; *see* AR 193.  Under the teaming arrangement rules, each CTA may consist of only one other-than-small business JETS IDIQ holder (as the CTA lead), plus at least one small business and at least one

---

[1] Plaintiff attached to the Complaint a copy of the Solicitation, which is also included in the Administrative Record.  *See* Attach. to Compl., ECF No. 1-1.  For ease of reference, where this decision cites the Solicitation, it will cite only to the Administrative Record.

other small business from a group of socio-economic categories (as CTA members).[2]  AR 251.
The other-than-small business CTA lead is required to allocate at least 40 percent of all task order
dollars proposed per IDIQ year to its small business CTA members.  *Id.* at 194–95, 251.  Every
small business CTA member received a JETS IDIQ contract under the Solicitation but, if such
member did not receive an award outside of a teaming arrangement (*i.e.*, under Groups B or C), it
only qualifies to receive task order awards under Group A as part of its CTA.  *Id.* at 195, 251.
Because Plaintiff was a small business when it received the Contract as a Group B awardee, it was
not required to, nor did it, form or join a CTA during the base period.  *See id.* at 52.

The Contract anticipates fluctuations in the number of JETS IDIQ holders during the
Contract's base period and allows DLA under an "on-ramp provision" to determine the necessity
of initiating an open season to add new contractors through the issuance of a new solicitation.  *Id.*
at 195.  No open season has been initiated under this provision.  *See* ECF No. 13-1 ¶ 11.

The Contract also anticipates that the status of small business contractors may change
during the base period.  *See* AR 194.  Accordingly, the Contract provides that all small business
JETS IDIQ holders will be requested to re-certify 120 days before the end of the original five-year
base period to maintain their small business status for the three-year option period of the Contract.
*Id.*  Should a small business contractor lose its small business status, it may continue to hold its
IDIQ contract as an other-than-small business but cannot compete on Group B task orders.  *Id.*  To
continue competing on Group A unrestricted task orders, it, as an other-than-small business, must
form a CTA in accordance with the teaming requirements discussed above.  *Id.*

---

[2] These categories include Small Disadvantaged Businesses, Women-Owned Small
Businesses, Service-Disabled Veteran Owned Small Businesses, and HUBZone Small Businesses.
AR 251.

If DLA determines after the re-certification process that additional small business contractors are needed to maintain competition in Group B and/or Group C, the Contract permits it to issue a new solicitation to add such contractors. *Id.* If a small business contractor that was part of a CTA during the base period loses its status after the re-certification process, the Contract allows the CTA lead to propose additional small businesses to its CTA under the procedures of the on-ramp provision. *Id.* at 195.

On August 23, 2021, the DLA contracting officer emailed all JETS IDIQ holders to provide information about the re-certification process for the upcoming option period. *See id.* at 262. Specifically, the email advised that all small business contractors were required to re-certify their small business status by November 3, 2021. *Id.* It further advised that all small business IDIQ holders that were awarded contracts outside of a CTA and who would not be re-certified as a small business as of the November 3 deadline were required to establish a CTA and submit by October 12, 2021, a CTA teaming proposal meeting the requirements of the Solicitation. *Id.* (attaching an excerpt of the Solicitation (Amendment 11) outlining the contractor teaming arrangement rules). Importantly, the email stated that proposed CTA members needed to consist only of "JETS IDIQ holders that will have a Small Business Status on November 3, 2021." *Id.* The DLA contracting officer sent a second email on September 24, 2021, reiterating some of the re-certification instructions, including the requirement that proposed CTA members were limited to current JETS IDIQ holders re-certifying as small businesses. *See id.* at 266–67. Presumably to assist contractors establishing CTAs, the email attached a list of all current JETS IDIQ holders organized by CTA arrangement and business size. *See id.* at 269–71.

On October 5, 2021, Plaintiff asked DLA to retract its August 23, 2021 guidance and allow JETS IDIQ holders to establish CTAs with non-IDIQ holding small businesses. Letter from Jon

Levin to Michael Yacobacci (DLA) at 3, ECF No. 1-3. According to Plaintiff, DLA never responded to Plaintiff's letter. Pl.'s Resp. to Def.'s Mot. to Dismiss at 8, ECF No. 14.

**B.      Procedural Background**

Plaintiff submitted a pre-filing notice of bid protest in this Court on October 7, 2021, and a Complaint (ECF No. 1) and Motion for Preliminary Injunction (ECF No. 3) on October 12, 2021. The Complaint contains two counts: Count I alleges that DLA's re-certification instructions limiting proposed CTA members to current JETS IDIQ holders was a new, material requirement unlawfully added to the terms of the Contract's option in violation of FAR 17.207(f). ECF No. 1 ¶ 25. Plaintiff alleges that the change to the terms of the option circumvents the Competition in Contracting Act's ("CICA") requirement for "full and open competition" and is arbitrary, capricious, and otherwise unlawful. *Id.* ¶¶ 26–27. Count II alleges that DLA's re-certification instructions were "a clear and material departure from the terms of [the] Contract's option," *id.* ¶ 31, resulting in an out of scope, unlawful modification of the option, *id.* ¶ 32. As with Count I, Plaintiff alleges DLA's actions circumvent CICA and are therefore arbitrary, capricious, and otherwise unlawful. *Id.* ¶ 33. Plaintiff requests both preliminary and permanent injunctive relief, as well as declaratory relief, against DLA's exercise of the "materially altered option." ECF No. 1, Prayer for Relief ¶¶ A–C. Plaintiff also asks the Court to either require DLA to issue an option that conforms to its terms as written in the Contract or compete the allegedly modified option as a new requirement. *Id.* ¶ D.

On October 29, 2021, the Government filed its combined Motion to Dismiss or, in the Alternative, for Judgment on the Administrative Record and Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 13). The Government primarily argues that Plaintiff wrongly brings its claims under this Court's bid protest jurisdiction when the CDA in fact governs. ECF

No. 13 at 16–17.  Alternatively, the Government also moves for judgment on the administrative record, arguing that DLA's interpretation of the option is consistent with a fair reading of the terms of the Contract.  *See id.* at 22–24.

Plaintiff responded on November 8, 2021, and cross-moved for judgment on the administrative record.  *See* ECF No. 14.  Plaintiff argues that its claims do not arise out of contract administration but rather a violation of law in connection with a procurement, and thus it properly asserts this Court's bid protest jurisdiction.  *See id.* at 10–11.  On the merits, Plaintiff disagrees with the Government's interpretation of the option's terms as set forth in the Solicitation and Contract.  According to Plaintiff, DLA's re-certification instructions impose a new requirement that changed the scope of the option as written.  *See id.* at 11–13.

The parties' motions are fully briefed and ripe for decision.

## II.  DISCUSSION

### A.     Standard of Review

A challenge to the Court's subject-matter jurisdiction over all or part of the claims asserted in a complaint is properly raised by motion under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  Addressing jurisdiction at the initial pleadings stage is essential because jurisdiction is a threshold requirement.  Indeed, if the Court "determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."  RCFC 12(h)(3).

The burden of proving subject-matter jurisdiction lies with the plaintiff.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  In determining whether a plaintiff has met this burden on a motion to dismiss, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."  *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37 (1974)).

If jurisdictional facts are disputed, however, the plaintiff may not rely on allegations alone. It must produce "competent proof" supporting its allegations. *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936); *see Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence." (citation omitted)). The Court is then free to look at evidence outside of the pleadings as necessary and may "find facts on its own." *Meyers v. United States*, 96 Fed. Cl. 34, 43 (2010).

### B.      The Court Lacks Jurisdiction over Plaintiff's Claims.

Plaintiff asserts that its allegations state bid protest claims over which the Court has subject-matter jurisdiction under § 1491(b)(1) of the Tucker Act. ECF No. 1 ¶ 4. According to Plaintiff, this matter arises from DLA's violations of procurement law. Specifically, the Complaint alleges DLA violated the FAR by not exercising the Contract's option in strict accordance with its terms and also violated CICA by imposing a new requirement on the option that both circumvents and restricts "full and open competition." *Id.* ¶¶ 6–7; *see* ECF No. 14 at 10; *see also* Hr.'g Tr. (Nov. 23, 2021) at 22:22–23:5, ECF No. 18. Relying on the Federal Circuit's decision in *Distributed Solutions, Inc. v. United States*, Plaintiff argues that this Court has broad jurisdiction under § 1491(b)(1) to hear any claim "involv[ing] a connection with any stage of the federal contracting acquisition process." ECF No. 1 ¶ 5 (internal quotation marks omitted) (quoting 539 F.3d 1340, 1346 (Fed. Cir. 2008)).

According to the Government, this case is strictly a dispute over the administration of Plaintiff's Contract and thus is not subject to the Court's bid protest jurisdiction. ECF No. 13 at 15, 17. Instead, the Government argues that the CDA provides the proper basis for Plaintiff's claims, and, since Plaintiff has not satisfied the CDA's jurisdictional requirements, its claims must

be dismissed.[3]  *Id.* at 17.  The Government further argues that, even if the Court has bid protest jurisdiction, Plaintiff lacks standing to challenge DLA's exercise of the Contract's option, arguing that as an awardee it is not an "interested party" under § 1491(b)(1).  *Id.* at 18.

Before the Court may exercise its bid protest jurisdiction, it must determine whether Plaintiff is "objecting to a solicitation, proposed award, award, or violation of law 'in connection with a procurement or a proposed procurement'" and whether Plaintiff is an "interested party" with standing to assert such claim.  *Nat'l Air Cargo Grp., Inc. v. United States*, 126 Fed. Cl. 281, 288–89 (2016) (quoting 28 U.S.C. § 1491(b)(1)).  The Court finds that Plaintiff has not demonstrated either jurisdictional requirement.

1.  <u>Plaintiff Has Not Established That Its Claims Are Properly Brought as a Bid Protest.</u>

Under the Tucker Act, the Court has jurisdiction to hear bid protests brought by interested parties.  Section 1491(b)(1) provides, in relevant part, that the Court:

> shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  The Court's bid protest jurisdiction applies broadly.  As Plaintiff emphasizes, the Federal Circuit has recognized that the phrase "in connection with a procurement or a proposed procurement" is "very sweeping in scope."  ECF No. 14 at 10 (quoting *Distributed Sols.*, 539 F.3d at 1345).  Thus, a "non-frivolous allegation of a statutory or regulatory violation in

---

[3] Before the Court may exercise jurisdiction over a CDA claim, the claimant must first submit a written demand to the contracting officer that provides "adequate notice of the basis and amount of a claim; [] and a request for final decision.  In addition, the contractor must have received the contracting officer's final decision on that claim."  *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (2010) (citation omitted).  The parties do not dispute that Plaintiff has failed to satisfy these prerequisites.

8

connection with a procurement or proposed procurement is sufficient to establish [the Court's] jurisdiction." *Distributed Sols.*, 539 F.3d at 1345 n.1 (citation omitted).

Section 1491(b)(1), however, does not extend so far as to cover all manner of claims touching upon a procurement. Claims by a party to a government procurement contract "seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the [party's] contract" must be brought pursuant to the Court's jurisdiction under the CDA. *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) (emphasis omitted) (quoting FAR § 2.101) (holding that the definition of a claim under the CDA should be broadly construed); *see* 41 U.S.C. § 7102(a)(1)–(2) (providing that the CDA applies to "any express or implied contract . . . made by an executive agency" for the procurement of property, other than real property, and the procurement of services, among other things). When it applies, the CDA is the exclusive and only mechanism for dispute resolution. It "was not designed to serve as an alternative administrative remedy, available at the contractor's option." *Dalton v. Sherwood Van Lines*, 50 F.3d 1014, 1017 (Fed. Cir. 1995) (citing 41 U.S.C. § 605(b)); *see Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed. Cir. 1993) ("The CDA exclusively governs Government contracts and Government contract disputes." (citation omitted)).

Where a plaintiff asserts a bid protest claim arising from its own contract with the Government, the Court must examine the allegations closely because matters of contract administration and management fall under the Court's CDA jurisdiction. *See, e.g.*, *Trailboss Enters., Inc. v. United States*, 111 Fed. Cl. 338, 341 (2013) ("[O]nce awarded a contract, objections to the [] terms of the contract award are matters of contract administration which are properly brought as claims pursuant to this court's CDA jurisdiction." (citations omitted)); *Diversified*

*Maint. Sys., Inc. v. United States*, 103 Fed. Cl. 431, 436 (2012); *Frazier v. United States*, 79 Fed. Cl. 148, 160 (2007) ("[P]ure contract claims are not appropriate in a bid protest, even if clothed in the guise of a protest of an alleged statutory violation occurring in relation to a procurement."), *aff'd*, 301 F. App'x 974 (Fed. Cir. 2008). If the claim is a matter of contract administration, the plaintiff cannot avoid the CDA simply by alleging violations of statutory or regulatory provisions. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985) (citations omitted); *see also Kellogg Brown & Root Servs. v. United States*, 117 Fed. Cl. 764, 765 (2014) (rejecting the notion that a CDA claim can "be[] brought in the guise of a pre-award bid protest"). Instead, the claim falls under the CDA if it "sounds genuinely in contract." *Ingersoll-Rand*, 780 F.2d at 78; *see Nat'l Air Cargo Grp.*, 126 Fed. Cl. at 290.

Despite Plaintiff's attempt to spin its claims as a bid protest, the Court agrees with the Government that this case boils down to a matter of contract administration falling squarely within the ambit of the CDA. *See* ECF No. 13 at 17 (arguing that Plaintiff's challenge is a "pure contract claim" concerning only the administration of its JETS IDIQ contract (quoting *Frazier*, 79 Fed. Cl. at 160)). Indeed, Plaintiff's counsel conceded at oral argument that its claims could be brought in a breach of contract action. *See* ECF No. 18 at 20:6–13. Although Plaintiff argues that it has the prerogative to choose between bringing its claims as a bid protest or under the CDA, the caselaw suggests otherwise. *Id.*; *see Dalton*, 50 F.3d at 1017; *Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522, 527 (2009).

At their core, the claims asserted in Plaintiff's Complaint present a question that is fundamentally one of contract interpretation—*i.e.*, whether the Contract (which incorporates the terms of the Solicitation) requires CTAs established during the re-certification process to consist exclusively of current small business JETS IDIQ holders or whether DLA's re-certification

instructions impose a new, material requirement. *See* ECF No. 1 ¶¶ 1, 14, 19; *see also* ECF No. 14 at 8–9 (arguing that DLA "radically altered the language in its option" and asking "that this Court interpret the language in the initial Solicitation in a manner that does not require teaming with current contract holders"). To resolve Plaintiff's claims would require the Court to first interpret the Contract and determine the correct means of its administration. Matters of contract interpretation are bread and butter CDA claims. *See Todd Constr.*, 656 F.3d at 1311 (explaining that CDA claims include "the adjustment or *interpretation* of contract terms" (emphasis added)).

It is also well settled that a contractor's challenge to an agency's exercise of its contract option is a matter of contract administration that can only be brought pursuant to the CDA. *See Coast Pro., Inc. v. United States*, 828 F.3d 1349, 1355 (Fed. Cir. 2016); *Jones Automation, Inc. v. United States*, 92 Fed. Cl. 368, 371–72 (2010); *Gov't Tech. Servs.*, 90 Fed. Cl. at 531 ("[T]he Federal Circuit has repeatedly pointed to the CDA as the vehicle by which aggrieved parties to an option contract must resolve their claims"). Cases cited by Plaintiff for the principle that federal agencies "cannot lawfully exercise a contract option contrary to the terms of the option," further support this conclusion. ECF No. 1 ¶ 6 (citing, among other cases, *Arko Exec. Servs. Inc. v. United States*, 553 F.3d 1375 (Fed. Cir. 2009), and *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319 (Fed. Cir. 1997)). *Arko* and *Lockheed Martin*, like this case, involved contractors objecting to the manner in which the contracting agencies exercised the contractors' options. *See Arko*, 553 F.3d at 1377; *Lockheed Martin*, 108 F.3d at 322. Both cases, like this one, involved questions of contract interpretation to determine the proper manner of exercising the options at issue. *See Arko*, 553 F.3d at 1378; *Lockheed Martin*, 108 F.3d at 322. And in both cases, *unlike this one*, the plaintiffs brought their claims under the CDA. *See Arko*, 553 F.3d at 1376; *Lockheed Martin*, 108 F.3d at 322; *see also* Def.'s Reply at 3–4, ECF No. 15.

Plaintiff primarily relies on *Magnum Opus Technologies, Inc. v. United States* to argue that "when a plaintiff brings an action alleging violation of law and regulation as it pertains to the exercise of an option, the claims are not properly brought under CDA." ECF No. 14 at 10 (citing 94 Fed. Cl. 512, 527 (2010)); *see* ECF No. 18 at 24:18–24, 48:2–21. In that case, the plaintiffs were contract holders during the base period of the IDIQ contract at issue, but the Air Force decided not to exercise their contract options. *See Magnum Opus*, 94 Fed. Cl. at 523. The plaintiffs brought a bid protest contending that by removing an essential pricing term from the relevant IDIQ contracts the Air Force's exercise of four other contractors' options violated procurement law. *Id.* at 526. The plaintiffs argued that to comply with CICA the Air Force had to re-compete the option or issue a sole-source justification, neither of which it did. *Id.* The court found that the plaintiffs properly alleged bid protest claims, not matters of contract administration, and thus it had jurisdiction under § 1491(b)(1). *Id.* at 527.

The facts of *Magnum Opus* stand in stark contrast to those of Plaintiff's case. Unlike here, the *Magnum Opus* plaintiffs were contesting the exercise of the options of third-party contract holders, not the exercise of their own options. *Id.* at 526. In fact, the *Magnum Opus* court explicitly stated that when a contractor "bring[s] a claim regarding the Government's action with respect to its own contract—that is, that the Government acted in bad faith in failing to exercise an option—the contractor must bring the claim pursuant to the CDA."[4] *Id.* Here, Plaintiff is challenging

---

[4] Plaintiff's counsel contended at oral argument that *Magnum Opus* recognized that the plaintiffs could have brought a bid protest action challenging the exercise of their own options if the Air Force had decided to exercise them. *See* ECF No. 18 at 48:7–15. The Court presumes Plaintiff is referring to the discussion clarifying that the *Magnum Opus* plaintiffs were *not* bringing a claim challenging the agency's action with respect to their options. *See Magnum Opus*, 94 Fed. Cl. at 526. As part of that discussion, the court acknowledged the plaintiffs' position that "the Air Force could not have lawfully exercised plaintiffs' own options . . . as well." *Id.* But the decision did not go further to state that such position properly supported an independent bid protest claim.

DLA's action solely as it relates to the option in its own contract. Thus, Plaintiff argues something fundamentally different than the *Magnum Opus* plaintiffs. *See* ECF No. 14 at 12; ECF No. 18 at 22:13–20.

Moreover, that Plaintiff is alleging DLA made "a cardinal change to the terms of the contract," itself a breach of contract claim, further demonstrates the CDA's applicability. ECF No. 1 ¶ 7 (alleging the Government effected a "cardinal change to the terms of the contract [that] imposes requirements that restricts Harmonia's ability to form a CTA, gives existing small business holders greater opportunities to compete, and restricts Harmonia's ability to use companies that provide the Agency with a best value solution"); ECF No. 18 at 38:24–39:16. As the Government notes, the cardinal change doctrine applies in breach of contract disputes between contractors and the Government. ECF No. 13 at 19; *see Allied Materials & Equip. Co., Inc. v. United States*, 569 F.2d 562, 563–64 (Ct. Cl. 1978). A cardinal change in the breach of contract context "occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for" and is "so profound that it is not redressable under the contract." *Allied Materials*, 569 F.2d at 563–64.

A similar claim has been used in bid protest actions involving disappointed bidders challenging the Government's modification of a third-party's contract allegedly in violation of CICA's competition requirements. *See Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 465 (2001) (citing JOHN CIBINIC, JR. & RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS 384, 388 (3d ed. 1995)). In the bid protest context, the cardinal change analysis asks whether the Government's change to a third-party contract circumvents the statutory requirement of competition by "materially depart[ing] from the scope of the original procurement."

*AT&T Commc'ns., Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993) (citations omitted). Such a modification "violates CICA by preventing potential bidders from participating or competing for what should be a new procurement." *CESC Plaza Ltd. P'ship v. United States*, 52 Fed. Cl. 91, 93 (2002) (citations omitted). "[T]he most common factual scenario that implicates the cardinal change doctrine in bid protests occurs when a disappointed bidder learns of changes in the awardee's contract, and then attempts to invalidate the contract modification on the grounds that the changed contract is not that which was competed by the agency." *Aircraft Charter Sols., Inc. v. United States*, 109 Fed. Cl. 398, 410 (2013) (citations omitted).

The facts of this case do not fit the typical mold of a bid protest. Relying on *AT&T Communications* and *Ian, Evan & Alexander Corp. v. United States* ("*IEA Corp.*"), 136 Fed. Cl. 390 (2018), Plaintiff attempts to shoehorn its case into the Court's bid protest jurisdiction by arguing that the alleged modification of the terms of *its own* option violated CICA and should have been competed by DLA as a new requirement. *See* ECF No. 14 at 11–12. The Court cannot find, and Plaintiff has not cited, any case where a court exercised bid protest jurisdiction over a claim challenging a cardinal change or out-of-scope modification to an awardee's, as opposed to a third-party's, contract. As the Government highlights, *AT&T Communications* and *IEA Corp.*, although brought under the Court's bid protest jurisdiction, both presented situations where the plaintiffs challenged modifications to other awardees' contracts. ECF No. 15 at 4–5; *see AT&T Commc'ns*, 1 F.3d at 1203; *IEA Corp.*, 136 Fed. Cl. at 396. Plaintiff's allegations make clear that its challenge is confined to its own contract. *See* ECF No. 1 ¶ 32 (referring to DLA's interpretation as an "out of scope, material change *to the Contract*," and "an unlawful modification of *the Contract's* option" (emphasis added)). It cannot co-opt the Court's bid protest jurisdiction simply by reframing its claims as alleged violations of procurement law and requesting injunctive relief

(which is not available under the CDA).  ECF No. 14 at 14; *see Ingersoll-Rand*, 780 F.2d at 77; *Kellogg Brown*, 117 Fed. Cl. at 765; *ITility, LLC v. United States*, 124 Fed. Cl. 452, 459 (2015).

Rather, the caselaw supports the conclusion that claims alleging cardinal changes to a plaintiff's own contract fall under the CDA, no matter a plaintiff's efforts to disguise them as a bid protest. *See, e.g.*, *Kellogg Brown*, 117 Fed. Cl. at 769–70; *Gov't Tech. Servs.*, 90 Fed. Cl. at 527–28. As such, Plaintiff has failed to demonstrate that the Court can properly exercise bid protest jurisdiction over its claims.

> 2. <u>Even If Plaintiff Provided a Basis for the Court's Bid Protest Jurisdiction, It Lacks Standing to Bring Such Claim.</u>

The Government alternatively contends that Plaintiff lacks standing under § 1491(b)(1) to protest DLA's alleged modification of the option since Plaintiff, as a contract awardee, is not an interested party. ECF No. 13 at 18 (citations omitted).  Nowhere in its opposition brief does Plaintiff respond to the Government's standing argument. *See generally* ECF No. 14. At oral argument, Plaintiff's counsel contended that if the Government changed the terms of the option in a way that required a new solicitation pursuant to CICA then it has standing to assert its claims because it would be in the position of a prospective bidder with respect to the new procurement. *See* ECF No. 18 at 22:22–23:16; ECF No. 14 at 12. Plaintiff's argument does not hold water.

An "interested party" under § 1491(b)(1) is defined as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *AFGE, Loc. 1482 v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2)).  A contract awardee generally lacks standing to challenge agency action under § 1491(b)(1), although limited exceptions exist. *See Diversified Maint.*, 103 Fed. Cl. at 436–37.  For example, "[i]n some instances, this court has allowed awardees to challenge, under section 1491(b), governmental corrective action that involved the termination or suspension of a

contract and the subsequent re-competition of the requirements of that contract." *Id.* at 437 (collecting cases). In that situation, the challenged corrective action essentially returned the procurement to pre-award status. *See id.* (citing *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 148–49 (2010)). Thus, for the awardee of a contract to have standing to bring a bid protest, it must demonstrate that its "claims do not relate to contract performance, but instead relate to a challenge to the underlying solicitation." *MLS-Multinational Logistic Servs. v. United States*, 143 Fed. Cl. 341, 366 (2019); *see Kellogg Brown*, 117 Fed. Cl. at 769 n.5 ("[W]hen a proposed corrective action effectively restores an awardee to the status of bidder by requiring it to compete again for a contract award, this action may be challenged by the former awardee in a bid protest." (citations omitted)); *Outdoor Venture Corp. v. United States*, 100 Fed. Cl. 146, 153 (2011) (holding that because there had been no re-solicitation of the contract at issue the plaintiff, as an awardee, failed to establish bid protest standing).

The court in *Diversified Maintenance Systems* rejected arguments like those Plaintiff presents here. In that case, the Navy withheld payments for task orders performed under a contract awarded to the plaintiff. *Diversified Maint.*, 103 Fed. Cl. at 433. It then submitted a derogatory evaluation of the plaintiff's performance to the Construction Contractor Appraisal Support System ("CCASS"), which the plaintiff alleged violated CCASS regulations. *Id.* The plaintiff attempted to bring its claim under § 1491(b)(1) based on alleged statutory and regulatory violations in connection with a procurement and because the Government allegedly made a cardinal change to its contract. *See id.* at 435. The court rejected the plaintiff's arguments on standing grounds, holding that as the awardee of the contract the plaintiff was not an interested party. *See id.* at 436 (quoting *ABF Freight Sys., Inc. v. United States*, 55 Fed. Cl. 392, 397 (2003) ("The court does not see how a plaintiff asserting claims pertaining to a contract it has made with the government could

be a 'disappointed bidder' for bid protest purposes." (citations omitted)).  Since the plaintiff neither asserted that the Government terminated or suspended its contract, nor attempted to recompete its requirements, the court concluded that the procurement had not been returned to the pre-award status necessary to support a bid protest.  *See id.* at 437.

Here, Plaintiff is the awardee of a JETS IDIQ contract and therefore is no longer "an actual or prospective bidder or offeror" with respect to that procurement.  *Outdoor Venture*, 100 Fed. Cl. at 152.  It thus follows that, as an awardee, it is "no longer an 'interested party' with standing to bring a bid protest claim under 28 U.S.C. § 1491(b)" absent limited circumstances not present here.  *Looks Great Servs., Inc. v. United States*, 145 Fed. Cl. 324, 328 (2019) (citations omitted); *see Diversified Maint.*, 103 Fed. Cl. at 437.  Plaintiff's attempt to demarcate its status as being both an awardee of the Contract and prospective bidder for the allegedly modified option under the same contract turns the § 1491(b)(1) standing inquiry on its head.  The agency action challenged in this matter (*i.e.*, the re-certification instructions) affect Plaintiff "because it is a contractor and not because it is (or might be) an offeror."  *Kellogg Brown*, 117 Fed. Cl. at 769; *see ITility*, 124 Fed. Cl. at 458.  Although Plaintiff challenges whether the agency is properly exercising that option in accordance with the strict terms of the Solicitation (as incorporated in the Contract), its claims do not present a circumstance where "a contract may be [or has been] lost to another bidder" due to an alleged violation of procurement law.  *Kellogg Brown*, 117 Fed. Cl. at 770; *see ITility*, 124 Fed. Cl. at 458.  The merits of Plaintiff's claims center on *how* Plaintiff is required to perform the option—whether as a CTA lead with any small business members of its choosing or with only current JETS IDIQ small business members.  As discussed above, those claims present a question of contract administration.  *ITility*, 124 Fed. Cl. at 458 (holding that a challenge to agency action by a government contractor "is properly viewed as seeking 'relief

arising under or relating to the contract' held by the party, rather than presenting a circumstance in which the party's 'direct economic interest would be affected by the award of the contract or by failure to award the contract.'" (citations omitted)).  Consequently, Plaintiff lacks standing to bring its claims under § 1491(b)(1).

### III.  CONCLUSION

The Court lacks jurisdiction to hear Plaintiff's claims because they must be brought under the CDA, not as a bid protest.  Even if Plaintiff did properly state a bid protest claim, it lacks standing because it is not an interested party under § 1491(b)(1).  Since Plaintiff has neither established the Court's bid protest jurisdiction nor pled the prerequisite acts necessary to invoke the Court's jurisdiction under the CDA, the Court **GRANTS** the Government's Motion to Dismiss (ECF No. 13) pursuant to RCFC 12(b)(1) and **DENIES AS MOOT** its alternative request for judgment on the administrative record.  The Court further **DENIES AS MOOT** Plaintiff's Motion for Preliminary Injunction (ECF No. 3) and Cross-Motion for Judgment on the Administrative Record (ECF No. 14).  The Clerk is directed to enter judgment accordingly.

**SO ORDERED**.


Dated: December 15, 2021                    */s/ Kathryn C. Davis*
                                            KATHRYN C. DAVIS
                                            Judge